IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEE ROBERTS,<br>    PLAINTIFF, | §<br>§<br>§ | |
| V. | §<br>§ | CASE NO. 3:24-CV-3169-B-BK |
| METROPOLITAN LIFE INSURANCE CO.,<br>    DEFENDANT. | §<br>§<br>§<br>§ | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* civil action was referred to the undersigned United States magistrate judge for pretrial management. Before the Court is *Defendant MetLife's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint*, Doc. 10. As detailed here, Defendant's motion should be **GRANTED** and Plaintiff's claims should be summarily **DISMISSED WITH PREJUDICE** as time barred.

## I. BACKGROUND

This action arises out of the alleged wrongful termination of Plaintiff's long-term disability ("LTD") benefits. Plaintiff was employed by Citigroup and participated in Citigroup's LTD benefits plan during her employment. [1] Doc. 3 at 2. Plaintiff contends that in October 2001, the plan's third-party administrator, Defendant Metropolitan life insurance company

---

[1] Plaintiff was originally employed by The Associates of North Texas, also known as Associates First Capital, which was acquired by Citigroup in 2000. Doc. 3 at 2.

("MetLife"), approved her claim for LTD benefits and she began receiving payments under the plan.  Doc. 3 at 2-3.

Plaintiff further alleges that while she was receiving LTD benefits, her cousin—without her knowledge—worked for another employer under Plaintiff's name and filed a separate short-term disability claim with MetLife using Plaintiff's identity.  Doc. 3 at 2.  Plaintiff contends that MetLife approved the second claim and unknowingly made payments on both claims until it received a letter dated October 7, 2005, requesting that the claims be merged.  Doc. 3 at 2-3, 14.  Plaintiff alleges that although the letter appeared to bear Plaintiff's signature, it was fraudulently prepared by her cousin and sent to MetLife without her knowledge or authorization.  Doc. 3 at 2-3.

Upon receiving the letter and learning of the dual payments, MetLife informed Plaintiff in writing that she had been overpaid, that she would be required to reimburse MetLife for the purported overpayment, and that her LTD benefits were retroactively terminated as of April 8, 2004.  Doc. 3 at 2, 7.  Plaintiff avers that "on or about November 5, 2005," she spoke with a MetLife representative who confirmed the termination and explained that the decision was based on MetLife's receipt of the allegedly fraudulent letter requesting a merger.  Doc. 3 at 2-3.

Plaintiff contends that after learning of the termination, she continuously corresponded with MetLife from 2005 through 2022 to request an investigation and reinstatement of her benefits.  Doc. 3 at 4-8; Doc. 16 at 9.  Despite her repeated requests, however, Plaintiff contends that MetLife refused to investigate her claims and instead chose to "cherry pick" portions of the disputed letter to justify its continued denial of benefits.  Doc. 3 at 4.

Plaintiff contends that in October 2014, while continuing to pursue reinstatement of her LTD benefits, she received correspondence from Citigroup regarding new pension plan options,

including a lump-sum payout. Doc. 3 at 5. Though not entirely clear from her complaint, Plaintiff appears to assert that, upon reviewing the pension materials, she realized that MetLife's stated termination date had adversely affected Citigroup's calculation of her pension payout. Doc. 3 at 5. Plaintiff alleges that as a result, she opened nine separate appeals with the Citigroup Pension Center to challenge the separation date. Doc. 3 at 6. After Citigroup declined to assist and again directed her to MetLife, Plaintiff filed a complaint with the Securities and Exchange Commission, which she says ultimately led to an investigation by the Department of Labor ("DOL"). Doc. 3 at 7-8.

Plaintiff asserts that, from that investigation, she received on January 14, 2021, a copy of Citigroup's response to the DOL dated December 14, 2020. Doc. 3 at 7. As best as the Court can discern, Plaintiff asserts that Citigroup's response informed the DOL that her requests to review her pension calculations were denied because Citigroup had received official documentation from MetLife indicating that Plaintiff had returned to work for another employer, and that her LTD benefits were therefore retroactively terminated as of April 8, 2004. Doc. 3 at 7.

On December 18, 2024, Plaintiff, proceeding without the assistance of counsel, filed this civil action against MetLife, asserting violations of the Employee Retirement Income Security Act ("ERISA"), as well as claims for breach of the duty of good faith and fair dealing, negligent misrepresentation, fraud, and breach of contract. Doc. 3, 8-12. MetLife moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing, *inter alia*, that all of five of her claims are barred by the applicable statutes of limitations. Doc. 10 at 9-12. Plaintiff filed a response, and MetLife has filed a reply. Doc. 16; Doc. 18.

## II. STANDARD OF REVIEW

"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Sivertson v. Clinton*, 3:11-CV-836, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.). A statute of limitations defense is an affirmative defense on which the defendant bears the burden of proof. *See* FED. R. CIV. P. 8(c)(1). While "[a] plaintiff is not required to anticipate or overcome affirmative defenses" in the complaint, *see Nobre v. La. Dep't of Public* Safety, 935 F.3d 437, 442 (5th Cir. 2019), noncompliance with the applicable statutes of limitations may support dismissal under Rule 12(b)(6) where it is evident from the pleadings that "the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003), *cert. denied,* 540 U.S. 1161 (2004). Accordingly, if it is clear from the pleadings that any alleged cause of action is time barred, "a defendant's motion to dismiss should be granted." *Ingram v. City of Dallas*, No. 3:02-CV-2491, 2003 WL 298585, at *2 (N.D. Tex. Feb. 11, 2003) (Fitzwater, J).

## III. ANALYSIS

### A. Plaintiff's ERISA Claim is Barred by the Statute of Limitations.

In Count One, Plaintiff alleges that MetLife violated ERISA by relying on an allegedly fraudulent letter to terminate her LTD benefits without conducting a proper investigation and by denying her the right to appeal that decision. Doc. 3 at 8-9.

As an initial matter, MetLife argues that the complaint fails to state a viable ERISA claim because it appears to rely solely on 29 U.S.C. §§ 1141 and 1149, neither of which provides a

private right of action.  Doc. 10 at 12-13.  Plaintiff responds that the complaint's references to these provisions were intended only to describe MetLife's alleged misconduct, not to serve as the basis for relief.  Doc. 16 at 10-12.  She further contends that her lawsuit seeks to enforce her rights under the LTD plan and is therefore properly brought under ERISA's civil enforcement provision, 29 U.S.C. § 1132.  Doc. 16 at 10-12.  Finally, Plaintiff requests leave to amend her complaint if the Court concludes that her ERISA claim is inadequately pleaded.[2]  Doc. 16 at 12.

Because ERISA does not supply a specific statute of limitations for denial-of-benefits claims, courts apply the most analogous state limitations period.  *Faciane v. Sun Life Assurance Co. of Canada*, 931 F.3d 412, 417 (5th Cir. 2019) (citing *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013)); *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005).  A claim seeking to enforce rights under an ERISA-governed benefits plan is most analogous to a state-law breach of contract claim.  *King v. Unum Life Ins. Co. of Am.,* 447 Fed. App'x 619, 624 (5th Cir. 2011) (citation omitted).  Accordingly, the Court applies Texas's four-year statute of limitations for breach of contract claims.  *Id*. (citing *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex.2002) ("a party asserting a breach of contract claim must sue no later than four years after the day the claim accrues.") (citing Tex. Civ. Prac. & Rem. Code § 16.051))).

Although the length of the limitations period is determined by reference to state law, the accrual of an ERISA claim is governed by federal law.  *Faciane*, 931 F.3d at 418.  In cases involving the denial-of-benefits, "a cause of action accrues after a claim for benefits has been made and formally denied."  *Id; Harris*, 426 F.3d at 337.

---

[2] Amendment would be futile, however, because even if the complaint is construed as asserting an ERISA claim under § 1132, any such claim would be barred by the statute of limitations.

Here, Plaintiff alleges that MetLife retroactively terminated her long-term disability benefits on April 8, 2004, and that she learned of the termination on or about November 5, 2005. Doc. 3 at 2, 7. Her ERISA denial-of-benefits claim therefore accrued no later than November 5, 2005, when she received notice of the formal denial. *Faciane*, 931 F.3d at 418. Because Plaintiff did not file this action until nearly twenty years later in December 2024, her ERISA claim falls well outside the applicable four-year limitations period, absent a recognized exception or tolling event.

Although Plaintiff concedes that MetLife first denied her benefits in 2005, she contends that her ERISA claim is nevertheless timely under the continuing violations doctrine. Doc. 16 at 8-10. The continuing violations doctrine is an exception to the general federal accrual rule, which "extends the limitations period when a violation manifests over time, rather than as discrete acts." *Hearn v. McCraw*, 856 Fed. App'x. 493, 496 (5th Cir. 2021) (citation omitted); *McGowan v. Southern Methodist Univ.*, 715 F.Supp.3d 937, 952 (N.D. Tex. 2024). Under the doctrine, an ordinarily time-barred claim will accrue within the limitations period so long as the claim arises from the defendant's "continuous conduct," at least some of which occurred within the limitations period. *Hearn*, 856 Fed. App'x. at 496 (citing *Heath v. Bd. Of Supervisors for S. Univ. and Agric. And Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017). Accordingly, to invoke the doctrine, a plaintiff must show that "(1) there are separate-but related acts at issue; and (2) the violation [wa]s continuing" into the limitations period. *Id.* A plaintiff cannot satisfy the second element merely by showing that she continues to suffer the ongoing effects of a single, completed act. *Id.* Instead, the doctrine applies only when a claim "is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant." *Id.* (citing *Heath*, 850 F.3d at 737).

6

Here, Plaintiff argues that, while the initial ERISA violation occurred in 2005, MetLife continued to violate her rights from 2005 through 2024 by repeatedly refusing to investigate her allegations, reconsider its termination decision, or reinstate her benefits. Doc. 16 at 9. Under Plaintiff's theory, each refusal to reopen her claim constituted a separate but related ERISA violation, such that the limitations period was tolled until MetLife's most recent refusal by letter dated May 20, 2024. Doc. 16 at 9-10. Because MetLife's most recent denial occurred within the applicable four-year limitations period, Plaintiff maintains that her claim is timely. Doc. 16 at 9.

Plaintiff cites no authority supporting the application of the continuing violation doctrine to ERISA denial-of-benefits claims, and the Court of Appeals for the Fifth Circuit has not decided whether the doctrine applies in this context. *See Berry v. Allstate Ins. Co.*, 84 F. App'x 442, 444 (5th Cir. 2004) (per curiam). While the doctrine has frequently been applied to employment discrimination claims under Title VII, several Circuit Courts that have addressed the issue have rejected its application in ERISA benefit cases, particularly where, as here, the claim arises from a single decision that produces lasting consequences. *See, e.g., Novella v. Westchester Cnty.*, 661 F.3d 128, 146 (2d Cir. 2011) (rejecting application of the doctrine to ERISA claims "based on a single decision that results in lasting negative effects."); *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 522 (3d Cir. 2007) (declining to adopt a "'continuing violation theory' whereby a new cause of action would accrue upon each underpayment of benefits owned" under an ERISA-governed plan); *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996) (same).

Even assuming, *arguendo*, that the continuing violation doctrine could apply to ERISA claims, Plaintiff has not shown that it applies here. Although she attempts to characterize MetLife's conduct as a series of repeated violations, Plaintiff's claim ultimately rests on a single,

discrete act: the termination her disability benefits.  Plaintiff's repeated requests for reconsideration, and MetLife's refusals to reopen her claim, do not transform the initial termination into a continuing violation.  *Hearn*, 856 F. App'x at 496-97.  While Plaintiff may have experienced the continuing effects of the termination every time MetLife declined to reinstate her benefits, her only alleged injury—the denial of benefits for over 20 years—stems solely from the initial action.  *See Berry v. Allstate Ins. Co.*, 252 F. Supp. 2d 336, 346 (E.D. Tex. 2003) (holding that the insurer's refusal to allow plaintiffs to participate in its benefits plans "was the single act that served as the basis for the alleged wrongful discrimination"), *aff'd*, 84 Fed. App'x 442 (5th Cir. 2004); *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 214 (3d Cir. 2001) (holding that "where there was an outright repudiation [of benefits] at the time the employees' services were terminated, it [was] reasonable to expect that the statute of limitations began to run at that point").  Because Plaintiff's claim is based on the consequences of a single action, rather than on "the cumulative effect of a thousand cuts," the continuing violations doctrine does not apply to toll the limitations period.  *Hearn*, 856 Fed. App'x. at 496.

Accordingly, Plaintiff's ERISA claim is barred by the statute of limitations and should be dismissed.

## B. Plaintiff's Remaining State-Law Claims are Likewise Untimely.

Plaintiff's remaining claims for breach of contract, breach of the duty of good faith and fair dealing, fraud, and negligent misrepresentation are likewise barred by the applicable state statutes of limitations.

### 1.  Breach of Contract and Good Faith & Fair Dealing Claims

Plaintiff's claims for breach of contract and for breach of the duty of good faith and fair dealing arise from the same event underlying her ERISA claim—namely, MetLife's denial of her

LTD benefits.  Doc. 3 at 9-10, 12.  As to the former, Plaintiff alleges that MetLife breached its contract to provide Plaintiff with LTD benefits by "wrongfully terminating her benefits and ignoring the obvious facts . . . show[ing she] never worked for another company."  Doc. 3 at 12.  Similarly, with respect to the latter, Plaintiff alleges that MetLife engaged in "bad faith" by denying her claim without a reasonable basis and by failing to conduct a proper investigation into the claim.  Doc. 3 at 9-10.

Plaintiff's breach-of-contract claim is governed by the same four-year limitations period applicable to her ERISA claim, while her claim for breach of the duty of good faith and fair dealing is subject to a two-year statute of limitations.  Tex. Civ. Prac. & Rem. Code § 16.051; *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (citing Tex. Civ. Prac. & Rem. Code § 16.003(a)).  In the insurance context, both causes of action generally accrue when the insurer wrongfully denies benefits.  *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990); *see e.g.*, *Knott,* 128 S.W.3d at 223 (holding that insured's bad-faith breach claim accrued, and two-year limitations periods began to run, when insurer notified insured that she was not entitled to disability benefits and sought reimbursement for overpayment); *Wetsel v. State Farm Lloyds Ins. Co.*, 3:02-CV-510, 2002 WL 1592665, at *2 (N.D. Tex. July 18, 2002) (Fitzwater, J.) (holding that "[plaintiff's] breach of contract action based on wrongful denial of coverage accrued on the date [the insurer] denied coverage").

Here, the complaint makes clear that Plaintiff's breach of contract and bad-faith insurance claims stem from MetLife's allegedly wrongful termination of her benefits.  Doc. 3 at 9-10, 12.  Accordingly, these claims accrued, at the latest, on November 5, 2005, when Plaintiff was informed of the termination.  *Knott,* 128 S.W.3d at 223; *Wetsel*, 2002 WL 1592665, at *2.

Although Plaintiff vaguely alleges additional misconduct, including that MetLife engaged in bad faith by releasing "private medical information regarding its insured to third parties," she provides no factual detail regarding the timing, nature, or recipients of any such disclosure. Doc. 3 at 9-10. Even if this allegation were supported by sufficient facts, however, it would not cure the timeliness defect because the claim would nevertheless remain dependent on the original termination of benefits. Moreover, Plaintiff has not alleged, either in the complaint or in any subsequent filing, that her state law claims are subject to any tolling or that any actionable disclosure occurred within the applicable limitations period.

Accordingly, because nearly 20 years have elapsed since the claims accrued, both Plaintiff's breach of contract claim and her bad faith claim are patently barred by the applicable limitations periods. MetLife's motion as to these claims should therefore be granted and these claims should be dismissed.

2. <u>Negligent Misrepresentation & Fraud Claims</u>

Finally, Plaintiff's claims for fraud and negligent misrepresentation appear to arise out of statements MetLife allegedly made to the Department of Labor ("DOL") during its investigation into Plaintiff's lump-sum pension payout. Doc. 3 at 10-11. As best as the Court can discern, Plaintiff alleges that during this investigation, MetLife knowingly "told the DOL false information" including that she had worked for another company "and authored a letter to such effect." Doc. 3 at 10, ¶ 2. She further contends that this information caused the DOL to discount her claims that she had been wrongfully denied disability benefits and an accurate pension payout. Doc. 3 at 10, ¶ 3.

As MetLife points out, however, Plaintiff's assertion that MetLife made a misrepresentation to the DOL is not supported by any fact alleged in the complaint. Doc. 10 at

10

6. Indeed, although Counts Three and Four broadly attribute the alleged misrepresentations to the "Defendant," the complaint does not identify any specific statement made by MetLife to the DOL, nor does it allege when such a statement was made, who made it, or how it was false or misleading. *See* Doc. 3 at 10-11. To the contrary, the only communication identified in the complaint is a letter sent by Citigroup—not MetLife, dated December 14, 2020, which purportedly informed the DOL of the basis for the termination of Plaintiff's benefits. *See* Doc. 3 at 7, ¶¶ 49-50. While the complaint further alleges that MetLife "knew" that providing an "overpayment" letter would influence the DOL's investigation, such generalized assertions cannot cure the absence of any pleaded misrepresentation attributable to MetLife. Doc. 3 at 8, ¶ 51. As pleaded, these allegations fail to satisfy Rule 9(b)'s heightened particularity requirement and fall short even under the basic plausibility standard of Rule 12(b)(6). *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (holding that "[a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.") (citation omitted)

But even assuming Plaintiff could amend her pleadings to cure these deficiencies, her fraud and negligent misrepresentation claims would still be time barred. Under Texas law, claims for negligent misrepresentation are subject to a two-year statute of limitations, while fraud claims are subject to a four-year limitations period. Tex. Civ. Prac. & Rem. Code Ann. §§ 16.003(a), 16.004(a)(4). A cause of action for these claims generally accrues "on the date the defendant makes the allegedly false representation," not when the plaintiff later discovers it, unless the plaintiff alleges the misconduct was fraudulently concealed or inherently undiscoverable. *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226 (Tex.App.—Houston [14th

11

Dist.] 2008, no pet.) (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex.1988)); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).

Here, Plaintiff does not allege that MetLife fraudulently concealed the alleged misrepresentation or that the harm was inherently undiscoverable.  Accordingly, to the extent Plaintiff bases these claims on the letter provided to the DOL, her causes of action accrued on December 10, 2020, the date the letter was addressed.  *See* Doc. 3 at 7, ¶¶ 49-50; *Seureau*, 274 S.W.3d at 226 (holding that the plaintiff's fraudulent inducement claim accrued no later than the date that the allegedly false representations were made in a letter agreement accompanying the conveyance of land).  Applying the relevant limitations periods, Plaintiff's negligent misrepresentation claim therefore expired on December 10, 2022, and her fraud claim expired on December 10, 2024.  Tex. Civ. Prac. & Rem. Code Ann. §§ 16.003(a), 16.004(a)(4).  Because Plaintiff did not file this action until December 18, 2024, after both limitations' periods had run, these claims should likewise be dismissed as time barred.

## IV. LEAVE TO AMEND

Ordinarily, a *pro se* plaintiff should be granted leave to amend her complaint prior to dismissal, but leave is not required when she has already pled her "best case."  *Brewster v. Dretke*, 587 F.3d 764, 767-768 (5th Cir. 2009).  As outlined above, Plaintiff's federal and state law claims suffer from infirmities that are not curable by amendment.  Thus, granting leave to amend would be futile and cause needless delay.[3]

---

[3] Although the Court concludes that amendment would be futile as to the timeliness of her claims, the 14-day objection period will permit Plaintiff to proffer facts or allegations, if any, that can cure the deficiencies in those claims outlined herein, including the opportunity to establish any basis which would place her claims within the applicable limitations periods.

## V. CONCLUSION

For the foregoing reasons, *Defendant MetLife's Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint*, Doc. 10, should be **GRANTED**, and Plaintiff's claims should be **DISMISSED WITH PREJUDICE**. Because she has failed to state a valid claim for relief, *Plaintiff's Motion for Mediation*, Doc. 19, should be **DENIED**. Further, as no claims will remain pending, the Clerk of Court should also be directed to close the case.

**SO ORDERED** on February 2, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).